23-9511. Mr. Lipschitz. Thank you, Judge Hartz, and may it please the Court. Brian Lipschitz from Paul Weiss for Petitioner Christina Rangel-Fuentes. With the Court's permission, I'd like to reserve three minutes for rebuttal. We'll see how it works out. It doesn't always. Understood. The Board of Immigration and Fields committed two errors in this case, one with respect to cancellation of removal and one with respect to asylum. First, the Board erred by determining that Ms. Rangel did not have a qualifying child for purposes of cancellation of removal. This Court has already held that the qualifying child provision is ambiguous as to when the child's age should be calculated, and so the Our fundamental submission is that the word establishes in that provision cannot reasonably refer to a point in time later than when the record before the immigration judge is closed. How does your argument account for sort of the interpretive flexibility that needs to be read into what you concede is an ambiguous statute? We've held that. Yes, Your Honor. I think there's two primary forms of interpretive flexibility. The first is that there are multiple points in time when the child's age can be determined more than just two. It could be determined theoretically at the time of the application. It could be determined at the time the record is closed, and of course the Board's position is at the time of the final administrative decision. So we're not asking this Court to pick one time. We're asking this Court to set the boundaries on the reasonable ambiguity, and so that is why our argument is that the point at which the record closes is the latest, and that's all that's necessary to resolve this case. There's also another form of interpretive flexibility. Of course, the entire analysis is discretionary on the part of the immigration judge and the Board, and so the Board is free to take into account a child's age and where in the spectrum of 0 to 21 the child falls when determining what constitutes exceptional hardship. The Board is free, sorry, the immigration judge system is free to take into account what age the child is at the time of the written decision in terms of parceling out the 4,000 visas that are available under the statutory cap, and so all we're asking this Court is to analyze the eligibility determination that the immigration judge and the Board made here. They didn't say... Establishes isn't the only verb in this section. Why isn't the time to address this, to determine whether the person is a child, when the Attorney General cancels removal? First, the provision begins, the Attorney General may cancel removal. Why isn't it the age at that point that counts? Your Honor, when the case is being decided at every step of the way, it's ultimately uncertain what time removal will be canceled, and so there's an entire hearing held about some hypothetical future date when a visa becomes available under the statutory cap and removal can be canceled. So it would be difficult to conduct that analysis, and I do think that that dovetails... Why? I mean, you just wait until the person who is eligible for cancellation gets on the list for that year, and then you look at the age of the kid, then that's in the record, presumably, and it's hard about deciding the age at that point. I think that because there's no opportunity for another hearing, the way that this works, the hearing is held, the record is closed, and then the case goes into a holding pattern for a visa to become available, that it's kind of fundamentally unfair then to make a decision based on sort of one-sided further developments of facts, and not any facts that may have developed that would favor the applicant for cancellation. What sort of evidence do you put on about the birth date of the person? Understood, Your Honor. It's not just about the age, though. This is an integrated provision in 1229BB1D, and so there may be additional information about the exceptional and extremely unusual hardship, and whatever this court holds as to eligibility for purposes of the age would also, I think, textually have to apply for purposes of determining the hardship to the qualifying relative, and so it would be a little unusual, and we would submit unreasonable if the decision were being made on a cold record as to the child's age, based on a record that clearly closed, and the last opportunity for the L.A.M. to do the establishing, in this case, was nearly two years before the immigration judge issued his written decision. You know, the cancellation process is ultimately a snapshot. I mentioned that there is no new opportunity for a hearing as a matter of course when the visa number becomes available, and if you were to obtain cancellation of removal based on a child who was under 21 or some other relative who perhaps was ill, it's not as though after that process becomes final, the government, you know, sort of comes back and automatically checks again to see whether that relationship still exists. It's not a temporary status that only lasts until the child turns 21, and so to the extent that there feels like there might be some sort of oddity in looking at only the closed record and saying that the last reasonable... Once the child died, wouldn't it be kind of weird to cancel removal at a time when there's no child who's needy? If I'm understanding your record and the written decision, I think it is perhaps a little unusual, but it's just a constraint that Congress placed on how this process works by using the word establishes. For other provisions in the same statutory provision, the other requirements for cancellation, it used has been, it used verbs that refer to the present state of the applicant that, although it's not necessary for this court to interpret in this case, more naturally do refer to the current state of the applicant. Here, Congress, by using establishes, placed a limit on that reasonable ambiguity that refers to the proof that the applicant is offering. So as your position would require the agency to basically ignore what happens between the close of the record and the final adjudication, that is not fair game for purposes of your understanding of the statutes, right? There is one exception. Of course, the applicant has the ability under the INA to move to reopen the record. For instance, if a new qualifying relationship came in... But that's a different process. Correct. Yes, that is not inherent in the word establishes or anything about 1229B1D. Doesn't that seem to constrain discretion rather than comport with our concern about allowing for discretion? It does constrain discretion, but of course, as your honor knows, no statute sort of relentlessly pursues a single purpose. There are other ways that Congress might have written a statute that could have relentlessly pursued that purpose, but they did use establishes, which, you know, dictionary definitions and usage evidence placed the focus on the record. And it, you know, in addition to that sort of textual evidence, there is a countervailing unreasonableness to the board's interpretation in this case, which is that the government has the unilateral ability to decide the board, the immigration judge, to decide when this case, when a written decision will be issued in this case. And so it can, as here, I'm not suggesting that anything intentionally untoward happens, but certainly the system would be right for potential abuse that the immigration judge could wait, wait until the child ages out, and then deny relief on this eligibility grounds. And just to circle back to something I was saying earlier... Could I just ask a clarification question? In the Martinez-Parris case, didn't we already find the statute to be ambiguous, and didn't we already say that the interpretation of the agency was reasonable? Your honor, I agree with the first half. This court did say that the statute is ambiguous, and we are absolutely accepting that for purposes of our brief and our argument here, but I would respectfully disagree as to the second half. The court remanded for the board to further exercise its interpretive discretion. I don't read Martinez-Parris to have determined what the reason... We specifically found their interpretation was reasonable, but then we noted that there was this language from the... I'm trying to remember the name of the case, but there was language from the case that said, well, perhaps there might be some argument that there's delay, and that delay was attributable to the agency, and let's remand, and let's talk about that. But we interpreted the statute in favor of the agency, and I guess I'm struggling to figure out how we can now say, okay, we said it was ambiguous, and we interpreted it in favor of the agency, but now we're going to look at it again, and we're going to focus on a different word that they didn't necessarily focus on last time, and we're going to reinterpret it? Is that what you're suggesting? Your Honor, I think that this court is only constrained as far as the holding and the judgment in Martinez-Parris. We're not constrained that we said the statute was ambiguous and that the agency's interpretation of the time of determination is reasonable? We're not constrained by a published opinion that said that? I'm not disputing that Martinez-Parris has precedential force here, but I don't read it... As to the interpretation, it doesn't? As to, sorry... As to the interpretation, it does not? It said it is binding us to the ambiguity of the statute and leaving room for interpretive discretion, and then remand is for... I'd like you to point me to where it did that, where it left room for interpretive discretion. So in Martinez-Parris, looking at page 1281, it acknowledges the board's precedent in Isidro Zamorano. Right. Sorry, we should start on 1280. 1280, it says that it does not directly identify the point in time. So the board acknowledges, sorry, the court acknowledges the ambiguity and then goes on to discuss the board's interpretation on 1281 and says that the contrary to respondents' assertion that the DIA is bound by Isidro Zamorano, the outcome of that case does not necessarily dictate the outcome in every case. And so that is why we would submit the court's stop short of resolving the ambiguity for purposes of Chevron step two. Okay, thanks. And if I might just quickly turn to the asylum issue, the most straightforward way to resolve this issue is to do so on the basis of the optional brief before the board. In that brief, Ms. Ronheld took note of the immigration judge's finding that any fear of violence was attributable to generalized gang violence and pointed out that there was evidence in the record showing that it was on the basis of her status as a Mexican national going back to Mexico, other than going back to Mexico. Yes? What is your friend's best contrary position? I mean, I am reflecting on your argument on the asylum application and trying to understand why it's not as straightforward as you suggest. Why would there be, maybe this is better posed to your opposing counsel, but what is their best argument otherwise? As to the brief, I think the best argument as to the brief just relies on raising the standard as to what is required in a BIA brief. You know, the board does not have in its regulations exceptionally detailed requirements about what must be in the brief. The brief is ultimately optional. And so, you know... Is the fact that the brief is optional your best point? I think our best point is simply the words that are on the page in the brief. And then necessarily the court, of course, could look at the notice of appeal and there's a legal dispute about what the status of the notice of appeal is. But we would submit it in the most straightforward way as did you saw on the basis of the brief. And if your honors have no further questions, thank you very much. Good morning. May it please the court, Greg Mack for the Attorney General. Congress has told the Attorney General that he may cancel the removal in his discretion, but he's also told the Attorney General not to grant too many applications for cancellation of removal, specifically no more than $4,000 a year given fiscal year. Between those two poles, the Attorney General has filled that void with his policies and judgment. First, there are no conditional grants of cancellation of removal. Second, there is a cessation of removal proceedings when the cap is about to be approached and breached. And third, a non-citizen will still be considered, an application will still be considered a continuing application until the immigration judge finally adjudicates the case. Can I ask you a question about that? I'm a little bit confused about what it means to be a continuing application in the context of your friend's argument. How can there ever be a closed record? Well, there isn't ever a closed record. Until the immigration judge makes a final determination, it's an open record and the application is continuing. That's going back to the matter of decades ago. And can the petitioner supplement the record? Sure, they can supplement the record. And as well, DHS can supplement the record before the immigration judge. And I was listening to that argument and the argument was, well, it's closed at a certain point and no more evidence can be undertaken. But let's consider the potentiality that the non-citizen picks up a disqualifying conviction, an aggravated felony that disqualifies them from cancellation and removal. It is certainly not the law under the IMA or the regulations that the Department of Homeland Security can't bring that disqualifying conviction. Once the case was ceased because of the cap situation, the government can come back and say, wait a minute, there's a completely disqualifying conviction, an aggravated felony that disqualifies this person from any cancellation of removal. So the record is contained. That's why we have that continuing application doctrine. The record remains open until the immigration judge finally adjudicates the case. The record is not closed. So is that a reason why it would be unreasonable to interpret establishes in the way that you suggested to us? Absolutely, Your Honor, because as we pointed out in our brief, that's not the only verb, as Judge Hartz noted, in this case. We said the really operative verb is the Attorney And the petitioners briefed to the board, they didn't necessarily point to establish as the key verb in this case. They told the board that the gravity of their complaint was the term adjudication. That's why the board pivoted to their continuing application doctrine and said, that flies in the face of our continuing application doctrine. And that's why we consider this to be a continuing application. And when the proceedings reopened, the petitioner's qualifying relative had aged out at that particular time, and therefore, she had no qualifying relative. So the problem that the court had in Martinez-Perez was that the court concluded that the statute was ambiguous, and the agency had interpreted flexibility. But it remained because the board did not take into account the contingent on undue delay. So that's why the case went back to the board. The board, in this particular case, did consider undue delay and said there was none. So it doesn't have the same Martinez-Perez problem in this particular case. Could you respond to my question on the step two analysis and whether we already decided and interpreted the statute in the, I think I had the name wrong, Mendez-Garcia. Because, I mean, counsel said that we didn't reach step two, but here's a quote. At step two, we consider whether the BIA's interpretation is based on permissible construction statute. And we go on to say, we conclude, at step two, we conclude the BIA could reasonably determine that the statute requires an alien-seeking cancellation to establish hardship to a qualifying relative as of the time the IJ adjudicates the IJ's application. I guess I'm confused as to why you aren't suggesting that we don't need to reinterpret this statute again. Well, I'm not saying we don't. All we have here is an argument being made that, well, we didn't focus on the word establishes essentially. But we resolved the statute. We said it's ambiguous. And here's the BIA's interpretation. And it's a reasonable interpretation. And so I'm struggling for any authority and why the agency isn't objecting and saying, you already did that. We did object. And we say we object. We said, well, D really covers the waterfront here in terms of the Martinez-Perez. I didn't really see that. I guess I... Well, we said Martinez-Perez covers the And resolves it at step two in favor of the agency. So the statute's ambiguous. And what they say is, no, the word establishes opens another front to attack Martinez-Perez. Well, I guess, and do you agree with that? That we can say, all right, there's a word that we didn't interpret the first time around. Okay, I didn't really read in your brief that you were objecting to that. Well, we were responsive to their argument that... Is that part of their argument even? No, I think Martinez-Perez covers the waterfront in this case. If the statute is ambiguous, it's left to the agency to resolve the ambiguity. And we pointed out in our brief, we specifically said, Martinez-Perez and Martinez-Tapia, both together establishes that the agency has interpretive flexibility, but it doesn't have to exercise it in the applicant's favor. We expressly said that. Now, the case also says that, although if there's some argument about delay, then the agency needs to resolve that, essentially. And here, was that objection made? And was it really resolved? There was a recognition by the agency that they had the discretion under Mendez-Garcia to resolve the issue,  but the board did resolve the undue delay question. They said there was no undue delay. So they recognized the issue that was left open in Martinez-Perez, and they specifically responded to the undue delay question. The board specifically said, we find no undue administrative delay in this particular case. And was it clear that that was because of the visa limit? Clear because of the visa limit. I also think there was no motion to continue in the case, bringing up any exigent circumstances in the case, and just... Why should that be a burden on the applicant? Well, it should be a burden on the applicant if the applicant is saying, look, I should not have a cap and platen, and here are the reasons why, bring exigent circumstances to the immigration judge's attention. In terms of the question, what if the exigent circumstances exist in terms of the qualifying relative is near death? Now, correctly, you point out the qualifying relative dies. There's no hardship left. But certainly, a person could have an opportunity to bring that to the attention of the immigration judge. I mean, this case moved ahead in the docket. At least you have that opportunity before the immigration judge, and we have a completely different case in this particular case. But there was no motion to continue in this case. There was one child that actually aged out before this child aged out. So the facts were present in front of the petitioner. Martinez-Perez was at least available after the immigration judge's decision. The matter is that Doris O'Brien was available there, but there was no effort to bring this forward on the docket before the immigration judge. I'm not saying that would have been dispositive, but of course, we would have had a different record if that had been the case. But the agency dealt with the problem of Martinez-Perez in terms of a potential opening with respect to undue delay. The agency addressed that. And even in Martinez's tabula, this court recognized the congestion in the immigration court. So congestion in the immigration court probably contributed to the delay. That's why the court said there was no undue delay in this particular case. What confuses me a little bit about this, I don't want us to over-rely on Martinez-Perez, though it is binding, of course, on this panel, because that case seemed to hinge on the BIA not recognizing that it had jurisdiction. So it was remanded in order for the court to exercise the power that it did not think it had. So did it really resolve, as much as you are suggesting that it did? I think it did, because what it says is you have the interpretive flexibility to use an opening if there's an undue delay. And so what the board did here was it looked at the immigration judge's decision, said we agree with the immigration judge. Immigration judge had the flexibility to put the age at an earlier date in the proceedings, but it didn't have to, given Martinez-Tapia. So the board recognized its discretion. The board exercised its discretion, consistent with Martinez-Perez and Martinez-Tapia. So no, it shouldn't overrule or be even approaching overruling Martinez-Perez. The board—  Over-rely. Over-rely. Certainly, yeah. Over-rely. I think that's what happened pre-Martinez-Perez. The board over-relied on a matter of Isidoro Zambrano and just said, there's no qualifying relative. That's the end of the show. In this court, Martinez-Perez said, well, your language in Isidoro Zambrano says undue delay is a potential opening. Go back and look at that. The board here specifically dealt with the undue delay question. So we had asked the board to deny petition for review with respect to cancellation of a rule. If I may, I'll briefly move to the nexus consideration. It wasn't clearly exhausted in the petitioner's appeal break to the board, and that's why the board appropriately said the issue would wait. Now, petitioner points to the notice of appeal, and we would say it's not really there with respect to both the nexuses' determinations. What is required? I mean, it seems to me that it is perfectly there and perfectly clear unless I'm missing something about sort of a magic language that might be necessary to put the issue of nexus before the board. So what is the government's position about what is required that is missing? Let me turn to the notice of appeal itself. This is at page 42 of the record. And it actually says, warning, you must clearly explain the specific facts and law in which you base your appeal at the immigration judge's decision. The board may summarily dismiss your appeal if it cannot tell from this notice of appeal or any statements attached to this notice of appeal. Why are you appealing? Just below that are two questions. The important question here is, do you intend to file a separate written brief or statement after this notice of appeal? Petitioner checks the box, yes. Indicated to the board, we have a notice of appeal satisfying our right and demand to file a notice of appeal. But hold on, a pill break is coming. And in that pill break, there's not a word about nexus. Now, if we're in the Ninth Circuit under the ABB decisions which we cited, that's enough to take the case and support the board's decision on this court. As far as I know, it doesn't have a similar rule. But she explained that she's a member of a particular social group and has a well-founded fear of future persecution on that basis. In the notice of appeal, she tells the board, go look at my brief. But even so, let's take your point on the particular social group. There's two nexus determinations, particular social group and political opinion. The notice of appeal doesn't pick that up on the political opinion. Now, that's not in my brief. I want to be clear, I didn't know that in my brief. There are two nexus determinations, particular social group and political opinion. There's nothing in the notice of appeal that I notice regarding that. What is the requirement, what would we cite to, to support the requirement that both have to be identified in order to satisfy putting the board on notice of the nexus? If you refer to the notice of appeal, that I cited to you, you must clearly explain the specific facts and law. But the nexus has the two components. What specifically supports your position that both are required in that way? Well, the statute requires a particular social group and a nexus, or a protected ground and a nexus. So the statute, the signed statute itself requires- So this was incomplete in your view? Yes, absolutely. The statute requires protected characteristics and the persecution or fear thereof has to be on account of the protected characteristic. So we may be- Can you cite case law that interprets that statute strictly as far as what must be in the notice of appeal? Is there any agency authority for that? If it's not in our brief, it's basic asylum law that you have to have a protected ground and a nexus both to demonstrate eligibility for asylum. I'm surprised you haven't said more about Garcia Carvajal. Because if we were reviewing this as something that was raised in district court, we would say it was inadequately raised. You can't just state what your issue is. You have to explain it. I thought Garcia Carvajal required that that be done with the BIA also. Well, I- Right, so I was a little surprised you didn't rely more on Garcia Carvajal. Maybe I'm over reading Garcia Carvajal. Well, because I think it's so clear that their appeal brief, they told the board, we're filing an appeal brief. And appeal brief sets the stage for what the board should focus on. So it's just clear on the facts. You tell the tribunal what I want you to focus on and then you don't focus on what you're telling the court of appeals to focus on. So that is just a sort of a basic point. So I don't want to say you're- But that point is the whole point of Garcia Carvajal, I thought. Right, right. Well, I would agree with you if you think Garcia Carvajal controls the waterfront. I'll agree with you on that. Well, I was wondering what you saw that didn't. No, no, I'm not following you on that. But we think a BB covers the waterfront from the circuit's perspective. Petitioner has said that there's a third circuit decision going the other way in Hoxha. We don't have a certifying brief, but the Fifth Circuit had a decision called Claudio, which I'll submit a 28-J letter to after I return to Washington. Claudio, the Fifth Circuit says it disagrees with the decision in Hoxha and it agrees with the Sixth Circuit on this appeal issue. And therefore, there's a three-to-one circuit split going in the government's favor on this particular issue. So we ask the court to do not petition for removal. Thank you, counsel. You have a little over a minute left, I think. Thank you, Your Honor. I'll start with cancellation of removal. I just wanted to clarify, based on some further discussion of Martinez-Perez, that while the Ninth Circuit has resolved the issue in Mendez-Garcia. I was thinking of Mendez-Garcia. I apologize for that. I confused both of you. So the only other thing I would just quickly add. Our own decision was not all that clear about how we were interpreting. Agreed, Your Honor. On the subject of convictions, which my friend on the other side brought up, of course, that is a different provision of 1229B and uses a different verb. And so any decision granting a petition for review on the cancellation issue, in fact, would have no logical implications for that separate provision. I did also want to turn to asylum. There is no magic words requirement in the regulation. What happens here is that the standard was set out in the brief and then the specific facts were appointed to. There was a citation to a motion that had been filed before the immigration judge with the evidence on this issue. And it's important, I think, to read this brief in the context of the issue. The immigration judge kind of disposes of everything by saying your fear is based on generalized gang violence. And so it's quite natural for the brief to have responded by saying, no, here is the evidence of violence based on gender and returning citizenship. Judge Hartz, just to say a word on Garcia-Carvajal. I think that the issue as to whether a brief can kind of forfeit an issue that was raised in the notice of appeal was not squarely presented in that case because, of course, there were two separate issues being argued in the notice of appeal and the brief. And so I see my time is expiring. I'd ask the court to grant the petitions and remand for further proceedings. Thank you. Case is submitted. Counsel are excused.